UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ERIC ERICSON, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | ) 2:12-cv-00178-JAW |
| | ) |
| MARTIN MAGNUSSON, et al., | ) |
| | ) |
|     Defendants | ) |

**RECOMMENDED DECISION**

There are two motions to dismiss pending in this civil rights case, which was filed by Eric Ericson, an inmate at the Maine Correctional Center in Windham, Maine. In the first motion to dismiss (ECF No. 22), the sixteen defendants who are collectively identified as the "correctional defendants" seek dismissal of the action. The second motion to dismiss (ECF No. 30) is brought by the medical provider defendants, Corizon, Inc. and Correctional Medical Services, Inc. I recommend that the Court grant the correctional defendants' motion in part and deny it in part, and that the Court grant the medical provider defendants' motion in full.

**I.    BACKGROUND**

I begin with a general observation concerning the complaint allegations: Ericson has in some places in the complaint alleged what happened, but not who committed the alleged acts. In a few instances, he has alleged what happened and who committed the acts, but those persons are not parties. He has also named certain individual defendants who are not alleged to have committed any acts. He has named ten fictitious "John Doe" defendants who are not alleged to have committed any acts. I address these scenarios below and how they affect my recommended decision on the various claims.

Ericson begins with a general claim that the Department of Corrections has violated his constitutional rights, its own policies and procedures, and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. (Complaint, ECF No. 1, at 2, 5.)[1]

Ericson's first and sixth causes of action claim that his First Amendment rights to attend religious services at Maine correctional facilities and obtain religious materials have been denied. (Complaint at 5-6, 8; ECF No. 1-3.) He also claims that the rights of other unnamed persons were similarly violated, but he is the only plaintiff and these claims are his alone. (Complaint at 5-6.) He notes violations at both the Maine State Prison and the Maine Correctional Center. (ECF No. 1-3.) He complains that he was not allowed to attend or organize weekly and mid-weekly Protestant worship services. He also complains that the defendants have refused to accommodate fasting, music, and singing and have failed to provide sufficient hymnal books, a baptismal font, and other necessities. (ECF No. 1-3.) Counts one and six are not directed at any individual defendants in particular. (Complaint at 5-6, 8.)

Ericson's second cause of action complains of a denial of access to the law library, paralegal, and law library computer. (Complaint at 6, 9-10.) He also alleges that the computer "rarely works" and that the inmates are not notified about the computer or helped in using it. (Id.) He alleges that the law books are inaccessible and there are insufficient resources concerning civil law. (Id.) Ericson does not name any specific defendants in conjunction with these allegations. (Id.)

Ericson's third and fifth causes of action allege that unspecified defendants have violated the ADA. (Id.) Ericson's third cause of action alleges that his medical problems include chronic pain, nerve and back problems, numbness, hearing and vision problems, depression and other

---

[1]     Ericson filed three documents along with his complaint and refers to them as a "medical addendum " (ECF No. 1-2) a "religious addendum" (ECF No. 1-3), and a "history of medical and violations" (ECF No. 1-4). I treat them as part of the complaint for purposes of determining what his allegations are.

2

symptoms of mental illness due to pain. (Complaint at 6-7; ECF No. 1-2, at 1.) Ericson says he requested and was denied prescriptions that had been provided to him outside the prison context, and he also requested and was denied a handicap cell, special cushions, a cane, and a walker. (Complaint at 7.) He alleges that four doctors employed by Correctional Medical Services and/or Corizon have not looked at his medical records since 2010. (Id.) The fifth cause of action relates to Ericson's hearing and mental disabilities. (Complaint at 7-8.) No specific defendants are named in the fifth cause of action.

Ericson's fourth cause of action is a claim of cruel and unusual punishment under the Eighth Amendment, based on an alleged denial of proper prescriptions. (Complaint at 7.) He also complains that the prison diet exacerbates his diabetes and that he is forced to walk to the dining hall, increasing his chronic back pain. (Id.) No specific defendants are named.

Ericson's seventh cause of action claims that an unspecified defendant has made false allegations against Ericson and has been abusive, thereby violating correctional policies and procedures as well as the ADA and the Constitution. (Complaint at 8.) Ericson alleges that defendants Russell, Duperre, Tobey, Simeone, Gerrish, Carl, Fearon, and George made false statements. (Complaint at 11.) Ericson does not state what the false statements were. He alleges that the defendants made the statements in response to his medical condition and in retaliation for his filing of grievances against them. (Id.)

Ericson's eighth cause of action is a claim relating to the fact that he was not permitted to take twenty minutes to eat his meals, in violation of departmental policies. (Complaint at 8.) He alleges that the hurried eating has caused him intestinal problems and choking. Ericson attributes these dining hall problems to defendants Gifford, Mendez, and Fearon. (Complaint at 10.)

Ericson's ninth cause of action stems from the fact that an unidentified defendant does not provide a useable typewriter. (Complaint at 8-9.) The complaint with accompanying addendum consists of more than two dozen typed pages. Ericson notes that he has been typing this civil suit since June 2010. (Complaint at 10.) He alleges that he was stalled due to lack of access to a working typewriter and time spent in segregation that was imposed in retaliation for his filing of grievances. (Id.)

Many of the entries Ericson lists concerning his medical history are not comprehensible as allegations that would support a claim. (ECF No. 1-4.) For instance the first entry is dated May 20, 2010, the category is "Medical," and the entry for that date states: "Saw nurse. Will set up appointment to see the 'Provider' for back, chronic pain, depression, dementia & diabetes." (Id. at 1.) The last entry is dated November 15, 2011, the category for that date is "Abuse," and the descriptive column was left blank. (Id. at 19.)

Ericson sums up his allegations by stating that his constitutional rights have been violated and he has been discriminated against by the defendants because he is in protective custody and is disabled. (Complaint at 14.) He seeks monetary damages for these various claims as well as various forms of injunctive and declaratory relief.

## II. DISCUSSION

### A. Applicable Legal Standard

Rule 12 of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for, among other things, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a plaintiff must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought."

Fed. R. Civ. P. 8(a). When deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a claim for recovery that is "'plausible on its face.'" Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted)). "A claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). A plaintiff's complaint need not provide an exhaustive factual account, only a short and plain statement. Fed. R. Civ. P. 8(a). However, the allegations must be sufficient to identify the manner by which the defendant subjected the plaintiff to harm and the harm alleged must be one for which the law affords a remedy. Iqbal, 556 U.S. at 678. Legal conclusions couched as facts and "threadbare recitals of the elements of a cause of action" will not suffice. Iqbal, 556 U.S. at 678; see also Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When the plaintiff is a pro se litigant, the Court will review his or her complaint subject to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Additionally, the pleadings of pro se plaintiffs are generally interpreted in light of supplemental submissions, such as any response to a motion to dismiss. Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003).

**B. Claims**

**1. Religious Practices**

Ericson's allegations of constraints on his religious practices are governed by the First Amendment and by the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1 et seq.

**a. RLUIPA claim**

"RLUIPA provides greater protection to inmates' free-exercise rights than does the First Amendment." Bader v. Wrenn, 675 F.3d 95, 98 (1st Cir. 2012) (quotation marks omitted); see also Lovelace v. Lee, 472 F.3d 174, 186 (4th Cir. 2006).

> RLUIPA provides that
>
> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [42 U.S.C. § 1997], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "As a general rule and subject to the compelling interest and least restrictive means qualifications, RLUIPA protects prisoners whose religious exercise has been substantially burdened by an unintended or incidental effect of a religiously-neutral government action or rule of general application." Bader, 675 F.3d at 98.

The parties do not dispute that Ericson is confined to a state correctional institution, which he alleged at the time of filing was the Maine Correctional Center. (Complaint at 2.) It is also undisputed that Ericson's first and sixth causes of action concern activities that constitute "religious exercise," which the statute defines as "any exercise of religion, whether or not

compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). The correctional defendants' motion focuses on whether Ericson's claims, as a matter of law, amount to a "substantial burden" on his religious exercise, pursuant to 42 U.S.C. § 2000cc-1(a). (Correctional Defendants' Motion at 8-10.)

The statute does not define what constitutes a "substantial burden" on religious exercise. The First Circuit has noted that it has not had the opportunity to define the statutory term. Spratt v. R.I. Dep't of Corr., 482 F.3d 33, 38 (1st Cir. 2007). The Supreme Court has defined the term in the context of the First Amendment free exercise of religion. See Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 717-18 (1981). Thomas concerned whether a Jehovah's Witness could be denied unemployment compensation benefits when he terminated his job because his religious beliefs forbade him from participating in the production of armaments. Id. at 709. The Supreme Court held:

> Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.

Id. at 717-18. In Lovelace, the Fourth Circuit noted that several circuits apply the Supreme Court's standard in Thomas to RLUIPA cases and joined them in applying that standard. Id. at 187.

The First Circuit has noted that in Lovelace, the Fourth Circuit applied the Thomas standard. Spratt, 482 F.3d at 38 (citing Lovelace, 472 F.3d at 187.) In Spratt, prison officials told the plaintiff that preaching by prisoners was not allowed under prison regulations. Id. at 35. The First Circuit held that assuming that the Thomas standard informed the definition of "substantial burden" under RLUIPA, the state did not seriously contest the issue of substantial

7

burden, and the plaintiff had made a prima facie showing sufficient to withstand summary judgment. Id. at 38. In Bader, although the First Circuit did not have occasion to define the term "substantial burden," it noted that the types of burdens addressed by RLUIPA concern "internal prison rules and procedures limiting religious practice," including "prohibitions on inmates preaching to fellow inmates," "preclusion of inmates in administrative segregation from attending weekly prayer services," "numerical limits on the possession of books," and "policies regarding food service during a religious fast." Bader, 675 F.3d at 99.

Ericson's allegations concerning substantial burden are typical of those brought under the statute. See id. at 99. His allegations of not being allowed to attend weekly or mid-weekly Protestant worship services, not being allowed to fast, and not being permitted access to sufficient hymnal books or a baptismal font are typical of cases that the First Circuit in Bader noted fall squarely within the focus of RLUIPA. See id. I conclude that Ericson has alleged a substantial burden under RLUIPA. This is not to say that Ericson states a claim that prison officials have a duty to provide him with any religious materials. See Cutter v. Wilkinson, 544 U.S. 709, 720 n.8 (2005) ("Directed at obstructions institutional arrangements place on religious observances, RLUIPA does not require a State to pay for an inmate's devotional accessories.")

Ericson's complaint, generously construed as it must be at this point, can be interpreted to seek monetary damages under RLUIPA in addition to injunctive relief. The Supreme Court has recently held that states do not consent to suits for money damages under RLUIPA by virtue of accepting federal funds, and, in the absence of an "unequivocally expressed" waiver of sovereign immunity expressed in the statute, such suits are barred by sovereign immunity. Sossamon v. Texas, 131 S.Ct. 1651, 1658-60 (2011). Consequently, Ericson's claims for monetary damages against any of the defendants in their official capacities must be dismissed.

Because the complaint does not identify which defendants allegedly denied him access to religious services, hymnals, etc., and the defendants who are named in a personal capacity are not alleged to have anything to do with the RLUIPA and First Amendment claims, I conclude that these claims amount to official capacity claims against the policymakers at the department and the two institutions responsible for offending policies. The relief that Ericson could obtain would be in the nature of declaratory and/or injunctive relief. My recommendation would therefore leave remaining in the case Ponte, Barnhart, and Burnheimer[2], in their official capacity only, as to the RLUIPA and First Amendment claims only as discussed below.

### b. First Amendment claim

Ericson's First Amendment claim must be vindicated, if at all, through 42 U.S.C. § 1983. See Kuperman, 645 F.3d at 74. "Section 1983 provides a cause of action against those who, acting under color of state law, violate federal law." Id. The First Amendment claim may pose an even more difficult standard for Ericson to meet. "A prison regulation which restricts an inmate's First Amendment rights is permissible if it is 'reasonably related to legitimate penological interests.'" Id. (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). "When contesting the reasonableness of a prison's regulation, the inmate bears the burden of persuasion." Id. The Court considers four factors:

(1)  whether there is a valid, rational connection between the regulation and the legitimate government interest put forward to justify it;
(2)  whether alternative means to exercise the right exist;
(3)  the impact that accommodating the right will have on prison resources; and
(4)  the absence of alternatives to the prison regulation.

Id. (citing Turner, 482 U.S. at 89-90). Although Ericson has the burden of proving the negative of each of these factors, at this stage of the litigation, he is subject to notice pleading

---

[2] These three individuals represent the current Commissioner of Corrections and the wardens of the Maine State Prison and the Maine Correctional Center.

requirements only, and he is entitled to have the Court accept as true the factual allegations of the complaint and draw all reasonable inferences in his favor. See Eldredge, 662 F.3d at 104. Unlike Kuperman, which was decided on summary judgment based in part on an affidavit from a prison official concerning the four factors, this case involves a motion to dismiss, and there is no evidence in the record on which to make any determination as to the four factors. See Kuperman, 645 F.3d at 74-77. Ericson's surviving First Amendment claim is the same claim as set forth above under RLUIPA and at this juncture does not implicate any defendants in their personal capacities.

### 2. Access to Library Resources

To state a claim of a violation of the right of access to the courts, a plaintiff must allege not only that the prison library facilities are inadequate, but he also "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351 (1996). Here, Ericson's claim falls far short of the mark because he has failed to allege what access to the state courts or this Court has been denied to him. His own complaint and other filings in this litigation indicate that he has been able to access the courts. The claim also fails because, to the extent it is directed to any of the defendants in their official capacity, it is tantamount to a claim brought in federal court against the State of Maine; such claims are precluded by the sovereign immunity bar of the Eleventh Amendment. See Poirier v. Mass. Dep't of Corr., 558 F.3d 92, 97 & n.6 (1st Cir. 2009).

### 3. Medical Care Under the ADA

Title II of the ADA provides in part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

10

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. The First Circuit has held that

> [t]o prevail on a Title II claim, a plaintiff must demonstrate:
>
>> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

Buchanan v. State of Maine, 469 F.3d 158, 170-71 (1st Cir. 2006).

Title II of the ADA provides a cause of action for discriminatory medical care provided to inmates, but not negligent medical care. Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 284 (1st Cir. 2006). "'The ADA does not create a remedy for medical malpractice.'" Id. (quoting Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)). The correctional defendants are entitled to defer to the "'reasonable medical judgments'" of Ericson's treating medical providers on issues concerning prescriptions for medications and special equipment. See Buchanan, 469 F.3d at 174 (quoting Sch. Bd. of Nassau County v. Arline, 480 U.S. 273, 288 (1987)). Ericson does not allege that he was prescribed medications and equipment and that the correctional defendants then withheld these from him. Rather, he alleges that his medical condition warranted certain prescriptions and equipment, but the medical providers negligently failed to recognize and accommodate his medical needs and disabilities. As the First Circuit noted in Buchanan, both the state and the court are entitled to defer to the medical professionals "in determining whether a patient meets the requirements for a particular treatment program," and this issue relates to the question whether the plaintiff is a "qualified individual" under the ADA. See id.

Ericson's claim is at its core not one of discrimination in treatment, but rather one of alleged negligent decisions by the medical professionals for failure to recognize that Ericson's

11

health status warranted prescriptions for certain medications and special equipment. He fails to state a claim under the ADA against either the correctional defendants or the medical defendants. There is no allegation that gives rise to a claim against the correctional defendants for Ericson's medical treatment, nor is there any allegation that would give rise to a claim against the medical defendants for alleged discriminatory actions by the correctional defendants about where Ericson was placed or which work assignments were given to him. (Complaint at 7, 11-12.)

### 4. Medical Care Under the Eighth Amendment

"The failure of correctional officials to provide inmates with adequate medical care may offend the Eighth Amendment if their 'acts or omissions [are] sufficiently harmful to evidence deliberate indifference to serious medical needs.'" Leavitt v. Corr. Med. Servs., 645 F.3d 484, 497 (1st Cir. 2011) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The First Circuit has held that the standard is not whether the care was negligent but rather whether it was "so inadequate as 'to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.'" Id. (quoting Estelle, 429 U.S. at 105-06) (quotation marks omitted)). A medical need is considered "'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quotation marks omitted).

The failure to provide a handicap-accessible cell may constitute an extreme deprivation sufficient to satisfy the Eighth Amendment. See LaFaut v. Smith, 834 F.2d 389, 392–94 (4th Cir.1987) (holding that a knowing failure to provide adequate toilet facilities to a paralyzed wheelchair-bound prisoner violated the Eighth Amendment). However, in this case, Ericson alleges that a handicap-accessible cell was necessary because his ability to maneuver around his cell is impeded. Ericson's allegations are not sufficient to demonstrate that he has been deprived

of his basic human needs. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir.1995); Thomas v. Pa. Dep't of Corr., 615 F.Supp.2d 411, 423 (W.D. Pa. 2009) (finding alleged deprivation insufficient to establish Eighth Amendment claim where the plaintiff claimed only that his ability to maneuver around his cell was impeded); Glaster v. New Jersey, No. 06–CV–5106, 2008 WL 3582797, *4 (D. N.J. Aug. 11, 2008) (unpublished) (finding no Eighth Amendment violation where the plaintiff did not receive handicap accessibility at all times, but was not deprived of his basic human needs). Based upon the foregoing, I conclude that Ericson has not alleged facts sufficient to state a claim under the Eighth Amendment.

### 5. Abuse and False Statements

Ericson alleges that defendants Russell, Duperre, Tobey, Simeone, Gerrish, Carl, Fearon, and George abused him, threatened him, harassed him, and made false allegations about him based on his medical condition and in retaliation against him for filing grievances concerning his medical condition. (Complaint at 11.) These claims are not cognizable as part of Ericson's ADA claims in the absence of any allegation that Ericson's treating medical professionals determined that he needed the prescriptions and special equipment. In other words, the claims for abuse fail for the same reason that Ericson's ADA claims fail. To the extent Ericson seeks to state a claim for abusive treatment independent of his ADA claims, the claim fails because these allegations are not actionable under 42 U.S.C. §1983. "Verbal threats and name calling usually are not actionable under § 1983." McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993); see also Ellis v. Meade, 887 F. Supp. 324, 329 (D. Me. 1995) ("Even threatening language by guards does not always violate the constitutional rights of prisoners.").

### C. Summary of Defendants and Claims Remaining

I recommend that the Court dismiss this action as to all claims except the RLUIPA and First Amendment claims concerning Ericson's religious expression.

I further recommend the dismissal of the action against the defendants who are alleged to have undertaken specific acts that may be related to other claims, but are unrelated to the RLUIPA and First Amendment claims. Those defendants are as follows: medical providers Corizon and Correctional Medical Services, which are identified in the ADA claim (Complaint at 7); correctional defendants Russell, Duperre, Tobey, Simeone, Gerrish, Carl, Fearon, and George, who are identified in the claim concerning allegedly false statements (Complaint at 11); and correctional defendants Gifford, Mendez, and Fearon, who are identified in the claim concerning the amount of time Ericson was permitted to eat (Complaint at 8). I recommend that all of these defendants be dismissed from the action because the complaint does not state a claim against them.

I include defendant Tobey among the defendants I recommend be dismissed from the case, although he is in a somewhat different position than the others. Ericson did not allege that Tobey took any action relating to the RLUIPA and First Amendment claims, but the correctional defendants' motion does mention some action by Tobey regarding the use of a room for bible study versus guitar-playing. (Correctional Defendants' Motion at 3.) The action mentioned in the correctional defendants' motion, if it had been pleaded by Ericson as it was represented in the motion, would be insufficient to state a claim of a substantial burden under RLUIPA because the defendants also represent that Tobey's action did not prevent the bible group from meeting. Ericson was not pressured to "'modify his behavior'" or "'violate his beliefs.'" See Spratt, 482 F.3d at 38 (quoting Thomas, 450 U.S. at 718). Thus, since Ericson has not made any allegation

as to Tobey, and the facts represented by the correctional defendants in their motion would not state a claim, I recommend the dismissal of Tobey from the action notwithstanding that he was mentioned in the correctional defendants' motion.

I recommend that defendants Wooster, Bailey, and the ten "John Doe" defendants be dismissed because no allegations are made against them. For the same reason, I recommend that defendants Magnusson, Ponte, Barnhart, and Burnheimer, be dismissed to the extent they have been sued in their individual capacities. Ericson has failed to allege that these defendants personally undertook any acts relating to RLUIPA and the First Amendment, which would be the only remaining claims. His allegations appear to be directed at departmental policy and implementation regarding his religious freedom.

## CONCLUSION

For all of the foregoing reasons, I recommend that the Court grant the correctional defendants' motion as to all counts of the complaint except the first and sixth causes of action, and dismiss all of the correctional defendants except Ponte[3], Barnhart, and Burnheimer in their official capacities. I recommend that the Court dismiss all counts of the complaint as to Corizon and Correctional Medical Services.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

---

[3] Ericson also names Magnusson, the former commissioner, as a defendant, but since he does not include any allegations that would give rise to personal liability, I conclude that Magnusson should be entirely dismissed as well. Any official capacity claim would be directed against the current commissioner, Ponte, who has been named.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

December 18, 2012 /s/ Margaret J. Kravchuk
U.S. Magistrate Judge